ESTATE OF WILLIAM E. EDMONDS, WILLIAM E. EDMONDS, JR., AND ARTHUR C. EDMONDS, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 18496.   Promulgated January 18, 1951.

*Timothy N. Pfeiffer, Esq.,* and *Howard O. Colgan, Jr., Esq.,* for the petitioners.

*Pershing W. Burgard, Esq.,* for the respondent.

**OPINION.**

BLACK, *Judge:* As has already been stated in our preliminary statement the Commissioner has determined the deficiency in estate tax here involved by adding to the gross estate reported on the return, $20,000 which was paid to the widow and five children of decedent upon his death by the New York Stock Exchange. The Commis-

sioner has done this on the ground that the $20,000 in question was insurance within the meaning of section 811 (g) (2) of the Internal Revenue Code.[1]

Petitioner contests the correctness of respondent's determination upon the following grounds:

1. The amount received by decedent's widow and children pursuant to article XVI of the constitution of the New York Stock Exchange was not receivable as insurance under a policy upon the life of the decedent.

2. Even though the amount received by decedent's widow and children pursuant to article XVI of the constitution of the New York Stock Exchange be viewed as insurance, decedent did not possess at his death any incidents of ownership with respect thereto.

3. Even though the amount received by decedent's widow and children pursuant to article XVI of the constitution of the New York Stock Exchange be viewed as insurance, no portion thereof is includible in decedent's gross estate under the payment of premiums test of section 811 (g) by reason of the fact that decedent made no contribution thereunder and possessed no incidents of ownership therein subsequent to January 10, 1941.

All three of these contentions of petitioner have been answered adversely by the Second Circuit's recent decision in *Commissioner* .v. *Marjorie F. Treganowan, Executrix, Estate of Max Strauss*, 183 Fed. (2d) 288, certiorari denied October 16, 1950, reversing our decision in 13 T. C. 159. The instant case was tried and the briefs were filed prior to the decision of the Second Circuit reversing us in the *Strauss* case.

Petitioner in its brief relies heavily upon our decision in *Estate of Max Strauss, supra*. The Commissioner in his brief concedes that the facts in that case are not distinguishable from the facts in the instant case and that if we are to follow our decision of the *Strauss* case the

---

[1] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

*     *     *     *     *     *     *

(g) PROCEEDS OF LIFE INSURANCE.—[As amended by section 404 (a) of the Revenue Act of 1942.]

*     *     *     *     *     *     *

(2) RECEIVABLE BY OTHER BENEFICIARIES.—To the extent of the amount receivable by all other beneficiaries as insurance under policies upon the life of the decedent (A) purchased with premiums, or other consideration, paid directly or indirectly by the decedent, in proportion that the amount so paid by the decedent bears to the total premiums paid for the insurance, or (B) with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person. For the purposes of clause (A) of this paragraph, if the decedent transferred, by assignment or otherwise, a policy of insurance, the amount paid directly or indirectly by the decedent shall be reduced by an amount which bears the same ratio to the amount paid directly or indirectly by the decedent as the consideration in money or money's worth received by the decedent for the transfer bears to the value of the policy at the time of the transfer. For the purposes of clause (B) of this paragraph, the term "incident of ownership" does not include a reversionary interest.

decision here must be for the petitioner. Respondent, however, argues that our decision in the *Strauss* case was wrong and should not be followed. In support of his position he cites and discusses many cases dealing with different phases of insurance. We deem it unnecessary to discuss these cases. Our own opinion in the *Strauss* case discussed quite fully what we understood was life insurance and if that case is to be followed here, there would be no need of any additional discussion on that subject. On the other hand, if we are to follow the Second Circuit in its reversal of the *Strauss* case, there is still no point in much additional discussion.

So the question we face here is whether we will stand by our decision in the *Strauss* case and respectfully decline to follow the Second Circuit's decision, or whether we will accept it as laying down the correct law and follow it in the instant case. It, of course, goes without saying that the reversal by the Second Circuit of our decision in the *Strauss* case makes the law for that case. Inasmuch, however, as the Tax Court must endeavor to make its decision uniform for all taxpayers within the United States, we cannot discharge that duty by following a circuit court's decision in a subsequent case by a different taxpayer if we think it is wrong, even though it would go to the same circuit in which we were reversed, and even though the facts are the same as the case in which we were reversed. If we did so, it would only result in confusion and unequal treatment of taxpayers merely because they live in different circuits. Therefore, when, as here, we have been reversed we must examine carefully the reversal to see whether or not we will follow the court in its reversal, not only in cases which lie within the jurisdiction of that particular circuit, but all other circuits as well. This we have done in the instant case. We have carefully read and considered the majority opinion of the Second Circuit in the *Strauss* case and have decided to follow it and no longer follow our own decision in *Estate of Max Strauss, supra.* This means that petitioner's point No. 1 stated above is not sustained; we hold that the $20,000 in question was insurance. The fact that decedent's estate continued its membership in the Exchange after decedent's death and continued to pay assessments does not change the character of the $20,000 insurance which was paid upon decedent's death. Petitioner has cited no authority and has advanced no sound reason why this difference in the facts of the instant case from those present in the *Strauss* case should make any difference in the decision of the two cases. We hold that it does not make any difference.

There is one other difference in the instant case from the *Strauss* case. It is not a difference in the facts because, as we have already noted, the only difference in the facts is the one which we have noted

above. The difference to which we now refer is this: At the hearing two experts eminent in the insurance field testified and their qualifications to testify as experts were well established. One testified in behalf of the petitioner and the other on behalf of the respondent. Neither purported to add anything to the facts because the facts were stipulated. What they did in their testimony was to give their opinions based on the stipulated facts as to whether the $20,000 in question was or was not insurance. Petitioner's expert witness gave as his opinion that the $20,000 was not insurance; respondent's witness gave as his opinion that the $20,000 was insurance. Both witnesses gave in considerable detail the reasons upon which they based their conclusions. Thus we have, as we often do, differences in opinion between well-qualified experts. We do not think there would be any profit in discussing the pros and cons of their differences. As we have already stated, since the hearings in this case took place and the expert testimony was received the Second Circuit Court's decision in the *Strauss* case has come down and the Supreme Court has denied certiorari. As we have already stated, after careful consideration, we have decided to follow the Second Circuit's decision in that case and to no longer follow our own decision in *Estate of Max Strauss, supra.* There is nothing in the expert testimony which would cause us to change that conclusion.

In view of the fact that the notice of deficiency does not give effect to petitioner's payment to the collector of internal revenue for the first district of New York of the further sum of $416.87 in respect of the Federal estate tax liability of the estate,

*Decision will be entered under Rule 50.*

Reviewed by the Court.